**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Denise Ramage Meling,<br><br>   Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>   Defendant. | No. CV-19-04892-PHX-MTL<br><br>**ORDER** |

  At issue is the denial of Plaintiff Denise Ramage Meling's Application for Disability Insurance Benefits by the Social Security Administration under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review, and the Court now addresses Plaintiff's Opening Brief (Doc. 13, Pl. Br.), Defendant Social Security Administration Commissioner's Answering Brief (Doc. 14, Def. Br.), and Plaintiff's Reply Brief (Doc. 16, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 10, R.) and now affirms the Administrative Law Judge's ("ALJ") decision. (R. at 13–28.)

**I. BACKGROUND**

  Plaintiff applied for disability insurance benefits on July 20, 2015, for a period of disability beginning on January 1, 2015. (R. at 16, 199–200.) The Commissioner denied Plaintiff's application initially and on reconsideration. (R. at 115–18, 123–25.) On March 29, 2018, Plaintiff and a vocational expert testified at an administrative hearing before an ALJ. (R. at 37–75.) In a decision dated August 7, 2018, the ALJ found that Plaintiff was not disabled. (R. at 13–28.) The Appeals Council subsequently denied review, making the

ALJ's decision the final decision of the Commissioner. (R. at 1–3.) Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

The pertinent medical evidence will be discussed in addressing the issues raised by Plaintiff. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: status post lumbar fusion, left shoulder arthritis, diabetes, cervical degenerative disc disease with stenosis, status post cervical fusion, and fibromyalgia syndrome. (R. at 20.) The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she could only stand or walk for four hours of an eight-hour workday. The ALJ also found that Plaintiff could never climb ladders, ropes, or scaffolds, or crawl, and could occasionally reach overhead with her bilateral upper extremities. Further, she could "frequently use her bilateral hands for handling," and "occasionally be exposed to nonweather related extreme cold and heat, excessive vibration, dangerous machinery, and unprotected heights." (R. at 22.)

In making these findings, the ALJ acknowledged that the medical evidence was consistent with "status post lumbar surgery, cervical degenerative disc disease, fibromyalgia, and related pain and limitations." (R. at 23.) The ALJ nevertheless found that Plaintiff's allegations of "greater pain, fatigue, and functional limitations are not support[ed] to the extent alleged." (*Id.*) Based on Plaintiff's RFC, the ALJ determined that Plaintiff was able to perform past relevant work as a vice-president of sales. (R. at 27.) Accordingly, the ALJ found that Plaintiff was not disabled during the relevant period. (R. at 28.)

## II.     LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a

scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id*. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

**III. ANALYSIS**

Plaintiff raises two arguments. First, she argues that the ALJ impermissibly rejected the opinion of her treating physician. (Pl. Br. at 14–19.) Second, Plaintiff argues that the

ALJ improperly rejected her subjective symptom testimony. (*Id*. at 19–25.) The Court disagrees with both arguments.

### A. Treating Physician Opinion

Plaintiff argues that the ALJ erred by rejecting her treating physician's assessment "in the absence of at least specific and legitimate reasons supported by substantial evidence in the record." (*Id*. at 14.) Specifically, Plaintiff argues that the ALJ "ignored" findings showing positive objective physical findings consistent with the treating physician's opinion, and that the ALJ was not qualified to "provide an independent analysis of medical evidence." (*Id*. at 16.) Plaintiff requests that the Court remand for an award of benefits. (*Id.* at 19.) Defendant responds that the ALJ provided legally valid reasons, supported by substantial evidence, to reject the treating physician's opinion. (Def. Br. at 6.) The Court agrees with Defendant.

The Social Security regulations instruct that the weight assigned to medical opinions is determined based on factors including the examining relationship, treatment relationship, the length and nature of treatment, supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c). That said, "special weight" is generally accorded to opinions of the claimant's treating physician. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). *See also Orn*, 495 F.3d at 631 ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians."). Nonetheless, the ALJ is not required to rely on testimony from a treating physician. If the opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record," the ALJ need not give it controlling weight. *Id*. § 404.1527(c)(2); s*ee also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings). If a treating physician's opinion is not given controlling weight, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) in assigning its relative weight. When rejecting a treating physician's testimony, "the ALJ must do more than offer [her]

conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Orn*, 495 F.3d at 632 (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

Here, the ALJ gave "little weight" to Plaintiff's treating rheumatologist, Joy Schechtman, D.O. (R. at 28.) Dr. Schechtman indicated in a medical report form that, among other things, Plaintiff could sit for less than two hours, stand or walk for less than two hours, lift less than 10 pounds, and carry up to 15 pounds. She also stated that it was medically necessary for Plaintiff to alternate between sitting, standing, or walking every 21 to 45 minutes,[1] with 10- to 15-minute rest breaks between position changes. She also opined that Plaintiff could "less than occasionally" use her right hand and "occasionally" use her left hand. She also stated that Plaintiff's pain was moderately severe and that she would miss "six or more" days of work each month due to her medical condition. (R. at 26.) These opinions were provided on a form, titled "Medical Assessment of Ability to do Work-Related Physical Activities." (R. at 1270–71.) The form consists of a check-off list without narrative explanations.

The ALJ gave Dr. Schechtman's opinion "little weight" because it was "inconsistent with the medical evidence of record." (R. at 27.) The ALJ stated:

> Specifically, treatment notes show the claimant has four out of five strength in the right lower extremity, normal sensation in the bilateral lower extremities, normal gait, normal alignment of the cervical spine with no pain or muscle spasm, and normal palpation of the lumbar spine with no scoliosis, muscle spasm, or tenderness. An examination performed on February 6, 2017 revealed full five out of five strength in her upper and lower extremities, normal sensation to light touch, and no evidence of atrophy. It appears this opinion is based upon the claimant's subjective complaints. Further, Ms. Schechtman[2] checked

---

[1] Although Plaintiff's Opening Brief states that Dr. Schechtman's report indicated that Plaintiff had to alternate positions every "21-25" minutes, (Pl. Br. at 12) the form states that alternating was required every "21-45" minutes. (R. at 1270.)

[2] Plaintiff states that the ALJ "incorrectly referred to 'Ms. Schechtman,' instead of confirming Dr. Schechtman was a physician and a specialist." (Pl. Br. at 16.) The Court agrees that the ALJ should have referred to "Dr. Schechtman," but does not find this issue

boxes on a form and provided no explanation for her opinion. (*Id.*) (citations omitted).

The Court agrees with Defendant that the ALJ did not err in assigning little weight to Dr. Schechtman's opinion because, in part, it was contradicted by objective medical evidence. For example, a December 21, 2016 examination at Barrow Brain & Spine indicated that Plaintiff had four or five out of five strength in all upper and lower extremities and "normal" sensation, gait, and alignment of the cervical spine. Plaintiff also had no "muscle spasm or tenderness," and no scoliosis. (R. at 1499-500). Further, a February 6, 2017 examination revealed five out of five strength in all extremities and no atrophy. (R. at 1487.) The ALJ did not err in concluding that these findings were inconsistent with Dr. Schechtman's opinions.

Plaintiff also takes issue with the ALJ's conclusion that Dr. Schechtman's assessment was based on Plaintiff's "subjective complaints." (R. at 27.) Plaintiff argues that there "is no basis for an inference that because Dr. Schechtman completed an assessment form she was relying heavily on [Plaintiff's] reported symptoms as opposed to her independent medical judgment." (Pr. Br. at 18.) The Court disagrees. A review of the assessment form demonstrates that some of the questions, including whether Plaintiff's symptoms caused limitations such as "pain, fatigue, dizziness, headaches, other," as well as whether her medications caused any side effects, necessarily depended upon Plaintiff's subjective reporting. (R. at 1271.) Further, although Dr. Schechtman indicated that she had provided treatment or supervised treatment to Plaintiff, and had considered or reviewed "treatment notes, records from other providers, radiographic reports, laboratory reports, patient's response to treatment, and/or other," Dr. Schechtman did not indicate that she performed any tests in completing the evaluation. (*Id.*) Further, as discussed below, the ALJ properly discounted Plaintiff's subjective complaints. The Court will not reverse on these grounds.

Plaintiff also takes issue with the ALJ's rejection of Dr. Schechtman's opinion

---

to be relevant to the substantive analysis.

because the treating physician "checked boxes on a form and provided no explanation for her opinion." (Def. Br. at 18 (citing R. at 27).) The Ninth Circuit has stated that an ALJ may permissibly reject evaluations "because they were check-off reports that did not contain any explanation of the bases of their conclusions." *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). Plaintiff cites authority stating that "there is no authority that a 'check-the-box' form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments." *Trevizo v. Berryhill*, 871 F.3d 664, 677 (9th Cir. 2017). Nonetheless, "the more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion." 20 C.F.R. § 404.1527(c)(3). The ALJ accordingly did not err in giving Dr. Schechtman's opinion "little weight" in part because the conclusions were not supported by any explanation.

The Court also disagrees with Plaintiff's argument that, as an "administrative adjudicator," the ALJ was unqualified to "provide an independent analysis of medical evidence." (Def. Br. at 16.) The ALJ, rather than any particular physician, is ultimately responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546(c). The ALJ must consider "all the relevant evidence in [the] case record," including medical records, medical opinions, and symptom testimony provided by the claimant's "family, neighbors, friends, or other persons." *Id.* § 404.1546(a)(3). Indeed, as Defendant notes, to "accept Plaintiff's suggestion that the ALJ may not weigh medical opinions against the evidence as a whole would render the ALJ's role obsolete." (Def. Br. at 9.)

In sum, although the ALJ gave little weight to Plaintiff's treating physician's opinion, the "ALJ acted in accordance with [her] responsibility to determine the credibility of medical evidence, and [she] gave specific, legitimate reasons for discrediting" Dr. Schechtman's opinion. *Thomas*, 278 F.3d at 958.

**B.     Plaintiff's Subjective Symptom Testimony**

Plaintiff also argues that the ALJ committed "materially harmful error" by rejecting Plaintiff's symptom testimony in the absence of specific, clear, and convincing reasons. (Pl. Br. at 12.) The ALJ found, after "careful consideration of the evidence," that Plaintiff's testimony concerning the "intensity, persistence and limiting effects" of her symptoms was not supported by the record. (R. at 23.) Defendant argues that the ALJ's reasons for discounting the symptom testimony were "consistent with the record evidence and controlling legal authority." (Def. Br. at 14.) The Court agrees with Defendant.

When a claimant alleges subjective symptoms, the ALJ must engage in a two-step analysis to decide whether to credit the testimony. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ first "determine[s] whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant satisfies step one, and there is no evidence of malingering, the ALJ may then reject the claimant's testimony "by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The "clear and convincing standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014). That said, the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Rather, when weighing the claimant's credibility, the ALJ may consider Plaintiff's "reputation for truthfulness, inconsistencies either in [her] testimony or between [her] testimony and [her] conduct, [her] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [she] complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997).

Here, the ALJ determined, at step one, that Plaintiff's medical impairments could be "reasonably expected to cause the alleged symptoms." (R. at 23.) At step two, the ALJ

found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*) The ALJ was accordingly required to offer "specific, clear and convincing reasons" for rejecting Plaintiff's symptom testimony. *Lingenfelter*, 504 F.3d at 1036. The Court concludes that the ALJ met this standard.

The ALJ provided multiple examples indicating that Plaintiff's subjective testimony was not consistent with the objective medical evidence. *Rollins*, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects"). (R. at 23.) For example, the ALJ noted that Plaintiff alleged "balance problems and frequent falls," but that medical records indicated that "nerve conduction studies of her lower extremities performed on July 25, 2014 and January 26, 2016 were normal." (R. at 23, 868) (emphasis in original). These studies did "not support the claimant's allegations." (R. at 23.) Plaintiff also testified that she needed a cane or walker for ambulation. As the ALJ noted, neither was prescribed, and Plaintiff's treating provider stated that she ambulates independently and that her gait "looks functional without any significant nerve or nerve root compromise." (R. at 23, 1161, 1162.) Plaintiff also reported neck discomfort, right upper extremity radiculopathy, occasional upper left extremity symptoms, and a "change in dexterity in her right hand." (R. at 23.) As the ALJ noted, "examinations of her upper extremities on October 5, 2015 showed the claimant had normal five out of five handgrip strength bilaterally." (*Id.*; R. at 778.) Further, "an examination performed on February 6, 2017 revealed full five out of five strength in her upper and lower extremities, normal sensation to light touch, an no evidence of atrophy." (R. at 24; 1487.) The ALJ did not err in discounting Plaintiff's symptom testimony, in part, because it was inconsistent with the medical evidence. *See Garrison*, 759 F.3d at 1018 (an ALJ must "rely on examples to show why they do not believe that a claimant is credible").

Plaintiff argues that the medical record "consistently reveals positive objective findings supportive of Meling's symptom testimony, including inability to make fists with her hands; painful knee, hip, and lumbar motion; weakness in her right lower extremity; and positive straight leg raise testing." (Pl. Br. at 13.) The ALJ acknowledged that certain "examinations show potentially more severe restrictions," but provided specific, clear, and convincing reasons for rejecting some of the findings. (R. at 24.) For example, the ALJ noted that on May 21, 2017, Plaintiff was unable to make a full fist and exhibited right leg weakness at an evaluation with her primary care physician. (R. at 24, 1540, 1555.) The ALJ discounted these findings because, first, "the restrictions 'unable to make a full fist' and 'weakness' are not quantified." (R. at 24.) Second, these conclusions were not supported by "examinations performed by providers at Barrow Neurological Institute, orthopedists, or treating neurologists, whose examinations the undersigned gives more weight, as these are specialists." (*Id*.)

The ALJ also noted, in discounting Plaintiff's subjective testimony, that her daily activities "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (R. at 26.) As examples, the ALJ noted that Plaintiff vacationed, including a two-week European cruise in September 2015 following a back surgery six months earlier. (*Id*.; R. at 625.) *See Beck v. Astrue*, 303 Fed. Appx. 455, 458 (9th Cir. 2008) (unpublished) ("Claimant's out-of-state travels . . . contradicted her subjective complaints of pain and lack of mobility."). The ALJ also noted that Plaintiff was a volunteer Bible study teacher. These activities, as well as her social interactions, "belie [Plaintiff's] allegations and instead, support the conclusions reached herein." (R. at 26.) *See Tommasetti*, 533 F.3d at 1039 (an ALJ may consider "many factors in weighing a claimant's subjective symptom testimony," including "the claimant's daily activities"). The ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). A district court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Id*. The Court is accordingly not

convinced by Plaintiff's argument that the record contains findings that support Plaintiff's testimony.

Second, the ALJ appropriately discounted Plaintiff's subjective testimony because the record demonstrated that she exhibited poor or inconsistent effort during physical examinations. (R. at 24–25.) For example, the ALJ noted that at a physical examination, Dr. Steve Chang noted that Plaintiff "showed very poor effort." (R. at 25, 1501.) Further, during an examination with Dr. Allan Rowley, Plaintiff scored a "3+" on a Waddell test. (R. at 25, 1174.) Physicians use "Waddell tests to detect nonorganic sources, such as psychological conditions or malingering . . . There are five types of Waddel's signs. A finding of three or more of the five types is clinically significant." *Reinertson v. Barnhart*, 127 F. App'x 285, 289 (9th Cir. 2005) (unpublished) (citation omitted). Dr. Susan Sorosky, Plaintiff's neurologist, also noted that Plaintiff's limp was "inconsistent depending on the specific task asked of her." (R. at 25, 1161.) *See Thomas*, 278 F.3d at 959 (finding "compelling" the ALJ's conclusion that the plaintiff "failed to give maximum or consistent effort during two physical capacity evaluations"). The ALJ also noted that Plaintiff reported to her provider, "I am not working. I am still loving it." (R. at 25, 1276.)

The Court concludes that, based on findings of inconsistent medical evidence, Plaintiff's daily activities, and poor or inconsistent effort at her medical evaluations, the ALJ did not err in discounting Plaintiff's subjective symptom testimony.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED affirming** the August 7, 2018 decision of the Administrative Law Judge (R. at 13–28).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment and close this case.

Dated this 15th day of September, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge